**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: August 20 2007**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In Re: ) | Case No. 07-30637 |
| ) | |
| William M. Toney and ) | Chapter 7 |
| Sandra K. Toney, ) | |
| ) | |
| Debtors. ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER DENYING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtors' Chapter 7 case for abuse under 11 U.S.C. § 707(b)(3) [Doc. # 20]. The court held an evidentiary hearing that Debtors, their counsel and counsel for the UST attended in person. The court has jurisdiction over this case pursuant to 28 U.S.C. §1334 and the general order of reference entered in this district. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A). Regardless of whether or not specifically referred to in this decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the following reasons, the court will deny the UST's motion.

### BACKGROUND

Debtors are married and have two independent adult sons and one dependent son who is 16 years old. William Toney ("Toney") has been employed at Verizon for 27 years. Sandra Toney is not employed but has worked part-time on and off during Debtors' marriage and is an active volunteer at Debtors' church.

On February 28, 2007, Debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code, indicating that their debts are primarily consumer debts. Debtors' bankruptcy schedules show minimal, if any, nonexempt assets and unsecured, nonpriority debt, consisting almost entirely of credit card debt, in the amount of $155,156. Sandra Toney testified that this amount likely includes duplication of amounts owed, as between original lenders and collection entities. She estimates that the actual amount owed according to her records is between $83,000 and $87,000. Mrs. Toney further testified that the credit card debt represents amounts charged for certain home improvements, including those necessary to ameliorate the asthmatic symptoms of her second son, who was then still a minor living in their home, as well as living expenses for such things as clothing, furniture, a lawnmower for the two acres upon which their house sits, and other household items. Mrs. Toney testified that they stopped using their credit cards approximately two years ago and have since "cut out the frills" in their expenditures. She also testified that she tried to work with the credit card companies in order to address mounting interest and fees, and had arranged with a few companies to deduct payments from their bank account in exchange for waiving fees that had been imposed.

Debtors' Statement of Current Monthly Income and Means-Test Calculation shows that Debtors' income is just below the median income for a family of three in Ohio. Debtors' amended Schedule I shows net income after payroll deductions of $3,635.[1] Debtors' amended Schedule J shows total monthly expenses of $3,363, including a $300 payment to one of their adult sons who allowed them to charge on his credit card approximately $3,600 for materials used for certain home improvements completed by Debtors and for which they still owe $2,100.[2] Thus, Debtors' amended Schedule J shows monthly net income after expenses in the amount of $272.

Since filing their petition and amended schedules, Debtors have experienced certain financial setbacks. At the time of filing their petition, Debtors owned three vehicles – a 1991 Dodge Caravan, a 1994 Chevrolet pick-up truck, and a 1996 Chevrolet Cavalier. In addition to multiple repair expenses for the Dodge Caravan and the pick-up truck, the engine of the Cavalier "blew." Because the cost to repair the engine was well in excess of its value, several weeks before the hearing on the instant motion, Debtors purchased a 2003 Dodge Durango for approximately $17,000. Debtors paid a $1,000 down payment and

---

[1] Debtors amended Schedule I to include in their income $60 previously deducted as a 401(k) plan loan repayment.

[2] Although Debtors argued in their response to the UST's motion to dismiss that their son was a secured creditor holding a mechanics lien with respect to the materials charged on his credit card, and their amended Schedule D lists their son as a secured creditor, at the hearing on the motion, Debtors conceded that the debt owed to their son is not secured.

2

financed the balance to be paid at $407 per month. Toney testified that they could not purchase a vehicle unless they could finance the purchase and the only financing available to them required that the purchased vehicle be within a certain age range with minimum miles on it. Toney further testified that while the Durango is the family vehicle, Debtors live in a rural setting and allow their youngest son to drive the vehicle to ensure safe and reliable transportation that allows him to participate in his high school sporting activities. Adding the Durango to their car insurance also increased the monthly cost of the insurance by $97.

Finally, Debtors Statement of Financial Affairs lists a number of civil actions against Debtors that are pending in state court. At the time of filing, however, no wage garnishment proceedings had yet occurred.

The UST filed a timely motion to dismiss for abuse, arguing that the totality of the circumstances of Debtors' financial situation demonstrates abuse under § 707(b)(3).

## LAW AND ANALYSIS

This case must be decided under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, ("BAPCPA" or "the Act") as it was filed on February 28, 2007, after the effective date of the Act. Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. In making this determination, the Sixth Circuit further explained as follows:

> [A] court should ascertain from the totality of the circumstances whether [the debtor] is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets.

*Id.* Congress incorporated this judicially created construct in § 707(b)(3) by requiring a court to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under

3

BAPCPA, Congress has clearly lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).

In this case, the UST does not argue that Debtors filed their petition in bad faith but instead contends that the totality of the circumstances show that Debtors have the ability to repay a significant portion of their secured debt. The totality of the circumstances test allows the court to consider both prepetition and postpetition circumstances. *See U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 455 (5th Cir. 2006) ("Section 707(b) does not condition dismissal on the *filing* of bankruptcy being [an abuse] but rather on the *granting of relief,* which suggests that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring *before* the discharge is granted."); *In re Mestemaker,* 359 B.R. 849, 855-56 (Bankr. N.D. Ohio 2007); *In re Hartwick*, 359 B.R. 16, 21 (Bankr. D.N.H. 2007). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone is sufficient to warrant dismissal. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *Id.* at 126-27. "Courts generally evaluate as a component of a debtor's ability to pay whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan." *Mestemaker*, 359 F.3d at 856 (citing *In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004). In *Behlke*, the Sixth Circuit found that the debtors' ability to pay at least a 14% dividend to their unsecured creditors warranted a finding that the debtors could repay debts out of future earnings through funding a Chapter 13 plan.

In this case, Toney has a stable source of income, having been employed at the same job for 27 years. And Debtors' unsecured debts are less than the limits for eligibility for relief under Chapter 13. *See* 11 U.S.C § 109(e). The UST contends that Debtors are able to fund a Chapter 13 plan, arguing that Debtors improperly deduct on amended Schedule J the $300 monthly expense paid to their son from income otherwise available to pay unsecured creditors. The UST further argues that this amount added to the monthly net income of $272 set forth in Debtors' amended Schedule J yields $572 per month that could be used to fund a Chapter 13 plan, which would result in a significant dividend to unsecured creditors. The UST does not challenge any of Debtors' other listed monthly expenses.

While the court agrees that Debtors may not prefer their son over other unsecured creditors and that the $300 monthly payment to him must be included in Debtors' discretionary income available to pay all

4

unsecured creditors, the court finds credible Toney's testimony that Debtors' financial circumstances have significantly changed since they amended their schedules. Specifically, the court believes that Debtors have actually lost the use of the 1996 Chevy Cavalier, which was the latest model vehicle they owned, and are now faced with a $407 monthly car payment that was not reflected on their amended Schedule J. Although the court questions the necessity of three vehicles for this family, Debtors' two other functioning vehicles, for which they have no car payments but have experienced multiple repairs, are 13 and 16 years old. Debtors are certainly entitled to at least one dependable vehicle for family use. At filing, they were the unusual consumer debtors who did not have installment payments associated with one or more motor vehicles. The court does not find it unreasonable that Debtors purchased another vehicle. Nor did they act unreasonably with respect to the particular vehicle purchased and the $17,000 debt incurred for it.

Adjusting Debtors' average monthly expenses to exclude the $300 payment to their son but include the $407 monthly car payment and the additional cost of $97 for car insurance results in net monthly income available for payment to unsecured creditors in the amount of $68. The UST concedes that the applicable commitment period for a Chapter 13 plan for Debtors, whose income is below the median income for a family of their size in Ohio, would be 36 months. Applying Debtors' net income of $68 to repayment of unsecured creditors over 36 months would yield a total payment of $2,448. Assuming Debtors' unsecured debt totals $83,000 to $87,000 as calculated by Sandra Toney, unsecured creditors would potentially receive a dividend of less than 3.0% after deduction of the Chapter 13 Trustee's administrative expenses. The court does not find this to be a significant repayment to unsecured creditors such that granting Debtors a discharge in this case would be an abuse of the provisions of Chapter 7.

In so finding, the court has also considered the fact that Debtors have not used their credit cards in approximately two years and have tried to work with the credit card companies in addressing the mounting fees and payments required under their agreements with the companies. However, their attempts have been insufficient to afford them relief, leading to lawsuits against them, and there is no suggestion that there are state remedies that may ease Debtors' financial predicament.

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the Second Amended Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. Section 707(b)(3) [Doc. # 20] be, and hereby is, **DENIED.**